*Jesse J. Murphy, et al. v. Liberty Mutual Insurance Co.*
Misc. No. 5, September Term 2021


**Administrative Authority of Chief Judge – Emergency Powers of Chief Judge**. Under the Maryland Constitution, the Chief Judge of the Court of Appeals is the administrative head of the Judicial Branch of the Maryland State government. In the exercise of its rulemaking authority with respect to administration of, and practice and procedure in, the State courts, the Court of Appeals has adopted rules to guide the Chief Judge's exercise of that administrative authority in the circumstances of an emergency affecting the court system. Among other things, measures taken should be consistent with actions taken in the other branches of government when the Governor has declared a state of emergency pursuant to the authority granted to the Governor by the General Assembly in the Public Safety Article of the Maryland Code. An administrative order of the Chief Judge temporarily tolling statutes of limitations under Maryland law with respect to civil actions during the Covid-19 pandemic was within the authority of the Chief Judge under the Maryland Constitution and Maryland Rules in light of the state of emergency that had been declared by the Governor. Maryland Constitution, Article IV, §18; Maryland Rules 16-1001 *et seq*.


**Separation of Powers – Emergency Powers of Chief Judge**. An administrative order of the Chief Judge temporarily tolling statutes of limitations under Maryland law with respect to civil actions during the Covid-19 pandemic did not violate the principle of separation of powers of the branches of Maryland State government guaranteed by Article 8 of the Maryland Declaration of Rights.


**Prohibition Against Suspension of Laws – Emergency Powers of Chief Judge**. An administrative order of the Chief Judge temporarily tolling statutes of limitations under Maryland law with respect to civil actions during the Covid-19 pandemic did not violate the prohibition against suspension of laws set forth in Article 9 of the Maryland Declaration of Rights.

United States District Court
for the District of Maryland
Case No. 1:20-cv-01961-SAG
Argument: December 3, 2021

IN THE COURT OF APPEALS
OF MARYLAND

Misc. No. 5

September Term, 2021

—————————————————

JESSE J. MURPHY, ET AL.

V.

LIBERTY MUTUAL INSURANCE CO.

—————————————————

\*Getty, C.J.,
\*McDonald
Watts
Hotten
Booth
Biran
Gould,

JJ.

—————————————————

Opinion by McDonald, J.

—————————————————

Filed: April 27, 2022

\*Getty, C.J., and McDonald, J., now Senior Judges, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to Maryland Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On April 24, 2020, then-Chief Judge Mary Ellen Barbera issued an administrative order that temporarily tolled statutes of limitations in civil cases for a period of time during the state of emergency occasioned by the Covid-19 pandemic. A commercial dispute is pending in the United States District Court for the District of Maryland between Appellants J.M. Murphy Enterprises, Inc., and its president Jesse J. Murphy (collectively, "Murphy Enterprises") and Appellee Liberty Mutual Insurance Company ("Liberty Mutual"). The timeliness of certain claims alleged in that case, as well as the diversity jurisdiction of the federal court over that action, may depend on the validity of the Chief Judge's administrative tolling order. Pursuant to statute and rule,[1] the federal district court has certified to this Court a question of law as to whether that administrative order exceeded the powers of the Chief Judge under the Maryland Constitution. As framed by the parties, the answer to that question turns on whether the Chief Judge's administrative tolling order violated the Maryland Declaration of Rights – in particular, Article 8, which guarantees the separation of powers of the branches of Maryland State government, and Article 9, which prohibits the "suspension" of laws.

For the reasons set forth in this opinion, we conclude that the Chief Judge acted within her authority when, in her capacity as administrative head of the Maryland Judiciary, she issued the administrative tolling order concerning the timeliness of complaints filed in Maryland courts during the pandemic. Specifically, the administrative order was based on

---

[1] Maryland Uniform Certification of Questions of Law Act, Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §12-601 *et seq.*; Maryland Rule 8-305.

the authority of the Chief Judge under the Maryland Constitution, the Maryland Code, and the Maryland Rules. In issuing that order, the Chief Judge did not, under the circumstances that existed at that time, unduly take upon herself – or, in the language of the case law concerning separation of powers, "usurp" – core functions belonging to either the Executive or the Legislative branches of State government. Nor did the emergency rules on which the administrative tolling order was based usurp another branch's core function. Finally, the tolling order did not violate the prohibition against the suspension of laws.

# I

## Background

### A. *Administrative Authority and Rulemaking in the Maryland Judiciary*

The question posed by the federal district court relates to the administrative authority of the Chief Judge of the Court of Appeals and the rulemaking authority of the Court. Those powers are simply stated in Article IV, §18 of the Maryland Constitution and elaborated to some extent in the Maryland Code and Maryland Rules.

### 1. Administrative Authority

The State Constitution provides that the "Chief Judge … shall be the administrative head of the Judicial system of the State." Article IV, §18(b)(1). Subsection (b) sets forth certain aspects of that authority with respect to the assignment of judges. §18(b)(2)-(5). It further provides that, in the absence of the Chief Judge, the administrative authority devolves upon the judge of the Court with the most seniority. §18(b)(5). Finally, it states that "[t]he powers of the Chief Judge set forth in [§18] shall be subject to any rule or regulation adopted by the Court of Appeals." *Id*.

2

The Maryland Rules acknowledge this constitutional delegation of power to the Chief Judge. *See* Maryland Rules 16-101 (general administrative structure of the Judiciary), 16-102 (noting the Chief Judge's "overall responsibility for the administration of the courts of this State").

2.     Rulemaking

The State Constitution also confers rulemaking authority on the Court of Appeals with respect to (1) practice and procedure in the courts and (2) the administration of the courts. It states that "[t]he Court of Appeals from time to time shall adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State…." Article IV, §18(a). The rules adopted by the Court "shall have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise by law." *Id.*[2]

The General Assembly has acknowledged the rulemaking power of the Court of Appeals with respect to both practice and procedure and judicial administration. In particular, it has directed that "[t]he power of the Court of Appeals to make rules and regulations to govern the practice and procedure and judicial administration … shall be liberally construed." CJ §1-201(a). That statute further provides that "[w]ithout intending to limit the comprehensive application of the term 'practice and procedure,' the term

---

[2] The Constitution also authorizes other courts of the State to adopt rules of practice and procedure or administrative rules "subject to the rules and regulations adopted by the Court of Appeals or otherwise by law." Article IV, §18(a). A statute limits the purview of such local rules. CJ §1-201(b).

includes the forms of process; writs; pleadings; motions; parties; depositions; discovery; trials; judgments; new trials; provisional and final remedies; appeals; unification of practice and procedure in actions at law and suits in equity, so as to secure one form of civil action and procedure for both; and regulation of the form and method of taking and the admissibility of evidence in all cases, including criminal cases." *Id*.

In the Maryland Rules, the Court has established a Standing Committee on Rules of Practice and Procedure ("Rules Committee")[3] and a process for the Court's consideration and adoption of rules. *See* Maryland Rule 16-802.

## B. *Statutes of Limitations*

The timeliness of a claim in a civil action is generally measured against the pertinent statute of limitations or under the doctrine of laches.[4] As the label itself indicates, a statute

---

[3] The Rules Committee is appointed by the Court of Appeals to assist the Court in the exercise of its constitutional rulemaking powers. Maryland Rule 16-701. The committee consists of judges, court officials, lawyers, and others with interest and expertise in the subject matter of court rules. Among the Committee's members are two legislators appointed from the State Senate and House of Delegates, respectively. *Id.*

[4] The doctrine of laches is a judicially-developed doctrine applicable to equitable claims in civil cases under which a court will decline to consider that claim when there has been an unreasonable delay on the part of the plaintiff in asserting it, to the prejudice of the defendant. *State Center, LLC v. Lexington Charles LP*, 438 Md. 451, 585-87 (2014). In applying the doctrine of laches, a court will "look to the General Assembly for guidance" by consulting an analogous statute of limitations or the general period of limitations in CJ §5-101. *Id*. at 603-04; *see also Frederick Road LP v. Brown & Sturm*, 360 Md. 76, 117 (2000) (when a case involves concurrent legal and equitable remedies, the deadline set by the statute of limitations is applied).

of limitations is a product of legislation enacted by a legislative body[5] – in this case, the General Assembly. A statute of limitations represents "a policy judgment by the Legislature that serves the interest of a plaintiff in having adequate time to investigate a cause of action and file suit, the interest of a defendant in having certainty that there will not be a need to respond to a potential claim that has been unreasonably delayed, and the general interest of society in judicial economy." *Ceccone v. Carroll Home Services, LLC*, 454 Md. 680, 691 (2017). In being faithful to that legislative judgment, the courts typically construe such statutes strictly. *Cain v. Midland Funding, LLC*, 475 Md. 4, 38 (2021). However, a statute of limitations is not immutable. *Ceccone*, 454 Md. at 692. This Court has recognized, in both rule and case law, that the deadline for filing an action seemingly set forth in a statute of limitations may be extended and, in some cases, shortened.

Because a statute of limitations sets a deadline for filing an action in court, it falls to the courts to interpret and administer that deadline. Some of that work is done by rule. For example, a court rule details how "any period of time" prescribed by rule or "any applicable statute" is to be computed. Maryland Rule 1-203.[6] Accordingly, that rule

---

[5] Another legislatively-created filing deadline that is a close cousin to a statute of limitations is a statute of repose. *See Anderson v. United States*, 427 Md. 99, 117-22 (2012) (noting that, while both types of statutes set deadlines for the assertion of a claim, a statute of limitations is triggered by accrual of the claim while a statute of repose may extinguish a claim before it accrues). We need not delve into the differences between a statute of limitations and a statute of repose here. There is no question that the filing deadline at issue in this case is a statute of limitations.

[6] That rule appears to be consistent with a statute that also describes generally the computation of time periods in statutes. *See* Maryland Code, General Provisions Article, §1-302. A Rules Committee Note codified with the rule observes that section (a) of the

5

governs the computation of time for purposes of a statute of limitations. Excluded from those computations of filing deadlines are, among others, days on which the pertinent clerk's office is not open for regular hours. Maryland Rule 1-203(a)(2).

Another court rule provides an additional 30 days for a plaintiff to file suit in a Maryland court, if the lawsuit was initially filed within the Maryland statute of limitations in another jurisdiction and dismissed by the court in the other jurisdiction for certain reasons specified in the rule. Maryland Rule 2-101(b).

Like other statutes, the application of a statute of limitations is also construed in case law. For example, the question of when a cause of action accrues – and thereby triggers the start of the limitations period – "is one left to judicial determination." *Cain*, 475 Md. at 35. Under that rubric, this Court developed a "discovery rule" that delays accrual of a cause of action, for purposes of computing the statute of limitations, until the plaintiff is aware, or reasonably should be aware, of the wrong done by the defendant. *See Poffenberger v. Risser*, 290 Md. 631, 634-38 (1981); *Hahn v. Claybrook*, 130 Md. 179 (1917).[7]

---

rule supersedes the statute to the extent of any inconsistency. *See* Maryland Constitution, Article IV, §18(a) (rules of practice and procedure adopted by the Court of Appeals have "the force of law").

[7] The discovery rule was originally developed to apply to medical malpractice cases, *see Hahn v. Claybrook*, 130 Md. 179 (1917), and "culminated in *Poffenberger v. Risser*, 290 Md. 631 (1981), where [the Court] made the discovery rule applicable in all civil suits." *Doe v. Maskell*, 342 Md. 684, 689-90 (1996). There is also now a statute of limitations that includes a discovery rule specific to medical malpractice actions. CJ §5-109.

In addition, the Court has applied "judicial tolling" to a statute of limitations when the tolling would "gratify legislative intent" – in other words, "prevent perversion of the [legislative] policy and purpose" underlying the statute of limitations. *Philip Morris USA, Inc. v. Christensen*, 394 Md. 227, 238-39 (2006), *abrogated on other grounds*, *Mummert v. Alizadeh*, 435 Md. 207 (2013). Judicial tolling is appropriate in a particular case if a two-part test is met: "(1) there is persuasive authority or persuasive policy considerations supporting the recognition of the tolling exception, and (2) recognizing the tolling exception is consistent with the generally recognized purposes for the enactment of statutes of limitations." *Id.*; *see also Cain*, 475 Md. at 53-69.

Finally, because a statute of limitations does not affect a court's jurisdiction over a claim, parties may generally toll or lengthen a period of limitations by agreement or waiver. *Ceccone*, 454 Md. at 692. In some circumstances, they may agree to shorten a statutory period of limitations in a way that courts will recognize. The courts have, by case law, established criteria as to when a private alteration of a limitations period will be given effect. *Id.* at 692-95.

The bottom line is that a statute of limitations is an expression of legislative policy to be implemented by and in the courts. In giving effect to a statute of limitations, as in

---

A related statutory exception, known as the fraud exception, that was enacted in 1868 and that is now codified at CJ §5-203, was based on a judicially-created doctrine that tolled the period for filing an action in equity where the defendant's fraud had induced the plaintiff not to sue within the applicable period. *See Piper v. Jenkins*, 207 Md. 308, 316 (1955).

construing other statutes and acts of the Legislature, the courts must ascertain and carry out the legislative purpose underlying the statute of limitations in harmony with other enactments of the Legislature.

## C. Dealing with Emergencies under Maryland Law

### 1. The Governor and General Assembly

As head of the Executive Branch of State government,[8] the Governor inevitably must take the lead in dealing with state-wide emergencies. The General Assembly has specifically conferred certain powers on the Governor for that purpose. Several sections of the Public Safety Article ("PS") of the Maryland Code pertaining to emergency powers are relevant here.

The Legislature has authorized the Governor to declare a state of emergency "if public safety is endangered or on reasonable apprehension of immediate danger to public safety." PS §14-303(a)(1); *see also* PS §14-107(a). The Legislature has further authorized the Governor to take certain actions for dealing with that emergency, including promulgation of "reasonable orders, rules, or regulations that the Governor considers necessary to protect life and property or calculated effectively to control and terminate the public emergency in the emergency area." PS §14-303(b). Among other things, those orders, rules, or regulations may:

---

[8] *See* Maryland Constitution, Article II, §1 ("The executive power of the State shall be vested in a Governor"), §9 (the Governor "shall take care that the Laws are faithfully executed"); *see also* Maryland Code, State Government Article, §3-302 ("The Governor is the head of the Executive Branch of the State government and, except as otherwise provided by law, shall supervise and direct the officers and units in that Branch.").

8

(1) control traffic, including public and private transportation, in the emergency area;

(2) designate specific zones in the emergency area in which the occupancy and use of buildings and vehicles may be controlled;

(3) control the movement of individuals or vehicles into, in, or from the designated zones;

(4) control places of amusement and places of assembly; [and]

(5) control individuals on public streets; . . . .

PS §14-303(b)(1)-(5). More generally, upon declaring a state of emergency, the Governor may "suspend the effect of any statute or rule or regulation of an agency of the State or a political subdivision" after finding such action "necessary in order to protect the public health, welfare, or safety." PS §14-107(d)(1)(i). The Director of the Maryland Emergency Management Agency ("MEMA") is to "coordinate the activities of the agencies of the State and of those political subdivisions included in the declaration in all actions that serve to prevent or alleviate the ill effects of the imminent or actual emergency." PS §14-107(c)(1).

Other powers conferred on the Governor are triggered by a "catastrophic health emergency" – defined as a "situation in which extensive loss of life or serious disability is threatened imminently because of exposure to a deadly agent." PS §14-3A-01(b). The phrase "deadly agent" includes, among other things, a "viral agent" or "other biological agent capable of causing extensive loss of life or serious disability." PS §14-3A-01(c)(1).

If the Governor determines that a catastrophic health emergency exists in the State, the Governor may issue a proclamation to that effect and may, among other things, order (1) "the evacuation, closing, or decontamination of any facility" and (2) "[i]f necessary and

9

reasonable to save lives or prevent exposure to a deadly agent … [that] individuals …

remain indoors or refrain from congregating." PS §14-3A-03(d). The General Assembly

has authorized the Governor to delegate certain duties to the Secretary of Health during

such an emergency and authorized the Secretary to issue directives concerning the isolation

or quarantine of individuals during the emergency. PS §14-3A-03 through §14-3A-05.

The statutes also specify the content of emergency declarations and certain notice,

duration, and procedural requirements for a declaration of a state of emergency. PS §§14-

107(a)(2)-(b), 14-303(c)-(d), 14-3A-02. The General Assembly has retained for itself the

power to terminate a declared state of emergency by joint resolution "at any time." PS

§14-107(a)(4)(i).

2.      The Judiciary

The Maryland Rules describe the authority of the Chief Judge for dealing with

public emergencies. Maryland Rules 16-1001 *et seq.*[9]

The rules concerning emergency powers apply when the Governor has declared a

state of emergency or in the event of "a natural or other event that significantly affects

---

[9] As we shall see, the rules codified in Maryland Rules 16-1001 *et seq.* were adopted
at the outset of the Covid-19 pandemic. Such rules had been previously contemplated, and
the rules that the Court adopted are not limited to emergencies caused by a viral pandemic.

Before the pandemic, the Court had adopted other rules related to catastrophic health
emergencies. Those rules concern proceedings that might be brought by an individual or
group of individuals to contest an isolation or quarantine directive issued by the Secretary
of Health under PS §14-3A-05 and Maryland Code, Health-General Article, §18-901 *et
seq. See* Maryland Rule 15-1101 *et seq.* Those rules do not bear on the issues in this
opinion.

access to or the operations of one or more courts or other judicial facilities of the State or the ability of the Maryland Judiciary to operate effectively." Maryland Rule 16-1001(a), (b). As described by a Rules Committee Note[10] codified with Rule 16-1001(c), the "Rules recognize that, in the event of an emergency declared by the Governor, the authority granted under these Rules must be exercised in harmony with lawful directives of the Governor and other Executive Branch officials to the maximum extent practicable." Upon a declaration of a state of emergency by the Governor, the Chief Judge "directly or through designees, shall, to the extent practicable, consult with the Governor, the Governor's designees, the Maryland Emergency Management Agency, and, as appropriate, other Executive Branch officials, in order to coordinate Judicial and Executive Branch responses to the emergency." Maryland Rule 16-1002.

The rules further describe specific actions the Chief Judge may take in an emergency. Maryland Rule 16-1003(a). Any such actions are to be "to the extent practicable, … compatible with directives and orders issued by the Governor" in connection with a declared state of emergency. Maryland Rule 16-1003(b).

Pertinent to this case, the rule authorizes the Chief Judge to:

> (2) suspend the operation of Rules that cannot be implemented as intended because of the emergency or event;

*** 

---

[10] A Rules Committee Note is approved by the Court of Appeals as part of its consideration of rules proposed by the Rules Committee and is an authoritative basis for construing the rule to which it is appended. *See, e.g., State v. Walker*, 345 Md. 293, 317 (1997); *Palmisano v. Baltimore County Welfare Board*, 249 Md. 94, 101 (1968).

11

(7) suspend, toll, extend, or otherwise grant relief from time deadlines, requirements, or expirations otherwise imposed by applicable statutes, Rules, or court orders, including deadlines for appeals or other filings, deadlines for filing or conducting judicial proceedings, and the expiration of injunctive, restraining, protective, or other orders that otherwise would expire, where there is no practical ability of a party subject to such deadline, requirement, or expiration to comply with the deadline or requirement or seek other relief;

(8) suspend any judicial business that is deemed not essential by the Chief Judge or close a court entirely when necessary;

(9) triage cases and categories of cases with respect to expedited treatment;

\*\*\*

(14) take any other appropriate action necessary to ensure that, to the maximum extent possible, essential judicial business is effectively handled by the courts.

Maryland Rule 16-1003(a). A Rules Committee Note codified with subsection (a)(7) states: "Granting relief from filing deadlines may take the form of directing relation back of filings made promptly after termination of the emergency to the day before the deadline expired."

Upon termination of an emergency, the Chief Judge is to review any measures taken under the emergency rules and devise a "reasonable schedule" for rescission of those measures. Maryland Rule 16-1003(b). A Rules Committee Note accompanying that section acknowledges that, upon termination of an emergency, some extensions of deadlines "may need to remain in place for a reasonable time."

Finally, the rules provide for the publication of any directives or orders of the Chief Judge on the Judiciary website and for notice of those actions to be given specifically to

the Governor, the legislative leadership, the director of MEMA, and (in the case of a catastrophic health emergency) the Secretary of Health.  Maryland Rule 16-1003(d).

II

**The Pandemic, the State of Emergency, and
the Chief Judge's Administrative Tolling Orders**

The Chief Judge issued the administrative tolling order that is the subject of this case as part of the State's response to the Covid-19 emergency that began in early 2020.  It was issued against the backdrop of the pandemic and various measures taken by the Governor and Legislature in response to that emergency.

*A.*    *The Pandemic*

Everyone above a very young age is conscious of the Covid-19 pandemic – the worst public health crisis in a century – that suddenly and pervasively altered life worldwide during the past two years.  For future readers of this opinion on the other side of the pandemic, the history books will provide the details.  For now, it suffices to say that the pandemic upended the patterns, rituals, and timelines of daily life – how one worked, shopped, played, and prayed; where one went; when and how one met with others; who was present for births, deaths, and the major life events in between.  Mandated vaccination, self-testing for the disease, masking, and "social distancing" became commonplace and, on occasion, controversial.

Some of the most drastic measures were taken in the early days of the pandemic during the spring of 2020 when its virulence was unknown, and the medical tools to combat it – vaccination and treatment – were a hope rather than a certainty.  Government offices

13

were closed, "non-essential" businesses were shuttered, stay-at-home orders were issued, and personal interaction of any sort was viewed as risky. At that time, a federal judge in Maryland, who was presiding over a case concerning anti-Covid-19 measures required to protect inmates at a local detention center, alluded to grim statistics on the spread of the virus and the resulting deaths and "struggle[d] to put into words the magnitude of COVID-19's devastation."[11]

The tide began to turn in early 2021 as vaccines became available. There were further advances and retreats as variants of the virus emerged, proliferated, and dissipated. People are resilient and have adapted, but adaptation takes time. The story of Covid-19 is not yet over, but this account is sufficient for purposes of this opinion.

We turn next to the specific measures taken in Maryland during the late winter and early spring of 2020.

### B. Legal Measures Taken to Combat the Pandemic

1. January – February 2020: Preparation for Arrival of the Virus in Maryland

The response of the Maryland State government to the pandemic began to take shape in January 2020, when the Governor directed State agencies to plan for a possible outbreak of Covid-19 in the State. On February 27, 2020, in anticipation of the arrival of the virus in Maryland, the Governor announced that he had added funds to the State budget for emergency preparedness, that the Department of Health and MEMA were coordinating the

---

[11] *Seth v. McDonough*, 461 F.Supp.3d 242, 247 (D. Md. 2020).

14

effort, and that his administration would brief members of the General Assembly, the Comptroller, the Attorney General, and the Treasurer.[12]

Also on February 27, the State Office of Personnel Services and Benefit Policy issued a notice entitled "Pandemic Flu and Other Infectious Diseases – Attendance and Leave." The stated purpose of the notice was to "ensure that the State has . . . policies that facilitate the containment of pandemic flu or other infectious disease while supporting Executive Branch operations and protecting the health and welfare of employees." The notice outlined three "levels" of agency operations during a pandemic flu or other infectious disease that, depending on the severity of the outbreak, would result in reduced operations that could include the closure of schools and public buildings.[13] The policy explicitly applied to Executive Branch agencies in the State Personnel Management

---

[12] A list of certain actions taken by the Governor and other Executive Branch officials referenced in this section of this opinion is provided, with links, in Appendix A to this opinion. The appendices to this opinion are available at the following link: https://perma.cc/J237-W89M. It should be noted that this list is hardly exhaustive of the many measures taken by the Governor, other Executive Branch officials, and local governments in Maryland during the early days of the pandemic.

[13] At "Level I" – the category for a "low to moderate" number of cases – "absenteeism in agencies may become noticeable and begin to concern the agency as a whole, or affect specific operations." At Level II, "cases will continue to increase," "[s]ome schools may have closed," and "[a]bsenteeism in agencies will be noticeable, and perhaps significant, and will cause disruption in agency operations as a whole, or in specific locations." Level III, "Emergency Operations," would be marked by "a high number of pandemic flu . . ., and/or a greater severity of the resulting illness, with the likelihood of increasing mortality rates." At that level, public schools and public buildings would be closed, either state-wide or in affected areas; "only mission-critical functions" would continue; only essential employees, as designated by their employer, were to report to work; and telework requirements could be relaxed.

15

System. It thus did not encompass personnel in the Judicial Branch, which is not part of that personnel system. *See* Maryland Code, State Personnel and Pensions Article ("SPP"), §6-303 ("All positions in the Judicial Branch of State government are excluded from the State Personnel Management System except as otherwise provided by law."); §2-201 ("Except as otherwise provided by law, an employee in the Judicial, Legislative, or Executive Branch of State government is governed by the laws and personnel policies and procedures applicable in that branch.").

2. March 2020: Governor Declares State of Emergency

One week later, on March 5, 2020, a Covid-19 case was reported in Maryland, and the Governor declared a "state of emergency and catastrophic health emergency" to "control and prevent the spread of Covid-19 within the entire state of Maryland." The State was not alone in taking such actions. On March 11, the World Health Organization declared the outbreak to be a global pandemic.

Each branch of State government then began taking measures to limit access to public buildings and reduce interactions among government personnel and members of the public. In the Executive Branch, the Governor activated the National Guard, closed the public schools, and issued orders prohibiting large gatherings, closing senior citizen centers, controlling the movement of people into the State's ports, and restricting the use of large government buildings.

The Governor also issued an order in which he found that, "to protect and save lives, it is necessary and reasonable" to extend expiring "permits, licenses, registrations, and other governmental authorizations," not only because of increased employee absences and

alternative working arrangements within the State's workforce, but also because the renewal of such authorizations "often requires the public to enter public buildings and interact with State employees and other persons, which may be contrary to prudent social distancing." The order authorized the "head of each unit of State or local government" to suspend "any legal or procedural deadline . . . or other time of an act or event described within any State or local statute, rule, or regulation that it administers."

Then in mid-session, the General Assembly announced on the evening of March 12 that its buildings would be closed to the general public.[14] The Legislature enacted emergency legislation targeted at various aspects of the pandemic, including providing the Governor with enhanced emergency powers for its duration. Chapters 13, 14, Laws of Maryland 2020. Shortly thereafter, the General Assembly announced that it would adjourn its session early, reportedly for the first time since the Civil War.[15]

During the remainder of March 2020, as the virus spread in Maryland and elsewhere in the country, the Governor issued orders limiting public gatherings and activities in various ways. On March 23, the Governor issued an order closing "all non-essential businesses," finding that, in order to "protect the public health, welfare, and safety, prevent

---

[14] *See* Bryan Renbaum, *Ferguson Urges Calm in Response to Coronavirus* (MarylandReporter.com March 13, 2020).

[15] *See* Erin Cox & Ovetta Wiggins, *Coronavirus to Shut Down Maryland General Assembly* (Washington Post March 16, 2020); Pamela Wood & Luke Broadwater, *Maryland Lawmakers to End General Assembly Session Wednesday, with Threat of Coronavirus Looming* (Baltimore Sun March 15, 2020).

the transmission of the novel coronavirus, control the spread of COVID-19, and save lives, it is necessary to control and direct the movement of individuals in Maryland, including those on the public streets" and "to control and direct in Maryland the occupancy and use of buildings and premises." One week later, the Governor issued a further directive "requiring all persons to stay at home." It stated that, unless specifically excepted, "all persons living in the State of Maryland are hereby ordered, effective as of 8:00 p.m. on March 30, 2020, to stay in their homes or places of residences." That order has been described as a "shelter-in-place" order. *See Duvall v. Hogan*, No. CV ELH-94-2541, 2020 WL 3402301, at *3 (D. Md. June 19, 2020).

3. March 2020: Initial Emergency Response of the Judiciary

On March 11, 2020, the Secretary of Health briefed the Judicial Council, an advisory body to the Chief Judge,[16] about the State's response to the expected pandemic. The Secretary advised the Council that there was currently no vaccine or therapy to treat the rapidly-spreading virus and that the Judiciary should plan for courts to be closed for

---

[16] The 21-member Judicial Council includes, among others, the Chief Judge of the Court of Appeals, the Chief Judge of the Court of Special Appeals, the Chair of the Conference of Circuit Judges, the Chief Judge of the District Court, the State Court Administrator, the Chair of the Conference of Circuit Court Clerks, the Chair of the Conference of Circuit Court Administrators, the Chair of the Court of Appeals Standing Committee on Rules of Practice and Procedure, and the Chief Clerk of the District Court. *See* Maryland Rule 16-110.

some time during the public emergency.[17]  One member of the Council, noting that most District Court facilities are in State buildings and that the courts "have a constitutional requirement to stay open to address certain matters," suggested that the Governor could defer to the Chief Judge as to whether courts would close or remain open upon declaration of a state of emergency.

The Secretary provided the Judicial Council with information about quarantine and incubation periods.  He stated that the "executive branch is experimenting with telework, to the extent possible, to mitigate exposure to risks," requested that the courts accept written reports in lieu of status hearings in certain cases, and expressed a concern that backlogs in community placement for individuals ready for release would soon develop. The Chief Judge asked the members of the Judicial Council to maintain "open and constant communication" with the Department of Health.

On March 12 – the same day that the Governor issued the order restricting use of government buildings and imposing restrictions on large gatherings and that the General Assembly closed its buildings to the public – the Chief Judge issued two administrative orders suspending jury trials and non-essential matters, respectively.[18]  In those orders, the

---

[17]  Minutes of the Judicial Council (March 11, 2020), available at https://mdcourts.gov/sites/default/files/import/judicialcouncil/pdfs/minutes/minutes20200311.pdf (https://perma.cc/A85U-2NFZ).

[18] *See* Administrative Order on the Statewide Suspension of Jury Trials (March 12, 2020), available at https://mdcourts.gov/sites/default/files/admin-orders-archive/20200312suspensionofjurytrials.pdf (https://perma.cc/GC7U-QDBA); Administrative Order on the Statewide Suspension of Non-Essential Judicial Activities Due to Emergency (March 12, 2020), available at

Chief Judge found that the Covid-19 outbreak had caused "an emergency . . . that poses a threat of imminent and potentially lethal harm to vulnerable individuals, including some Judiciary personnel, who may come into contact with a court or judicial facility and personnel." In light of that emergency, the Chief Judge suspended jury trials and certain non-essential activities. The next day, March 13, the Chief Judge issued an additional administrative order that closed courthouses to the public for all but certain emergency matters.[19]

In those administrative orders, the Chief Judge invoked her authority under the State Constitution as administrative head of the Judicial Branch. Simultaneously, the Rules Committee was drafting rules governing use of that authority for dealing with a public emergency.

### 4. Court of Appeals: Adoption of Rules Relating to Emergencies

On March 13, 2020, the Rules Committee considered a set of proposed rules relating to the emergency authority of the Chief Judge. At that meeting, the Chair of the Committee explained that the few provisions in statute and rule concerning public emergencies and the

---

https://www.courts.state.md.us/sites/default/files/admin-orders-archive/20200312suspensionnonessential.pdf (https://perma.cc/QTF2-5LUJ).

[19] *See* Administrative Order on Statewide Closing of the Courts to the Public Due to the COVID-19 Emergency (March 13, 2020), available at https://mdcourts.gov/sites/default/files/admin-orders-archive/20200313statewideclosingofcourts.pdf (https://perma.cc/BRQ3-PSS2).

20

Judiciary had resulted from specific past emergencies.[20] He said that the development of more general emergency rules had been contemplated, but could be delayed no longer in light of the rapidly-spreading coronavirus. The Chair noted that the Governor had comprehensive authority under a number of statutes to deal with emergencies, but that the statutes made little reference to the Judiciary. He stated that the lack of mention of the Judiciary was understandable because the responsibility to run the Judicial Branch is vested by the Maryland Constitution in the Court of Appeals and the Chief Judge, to be implemented primarily through the Court's rulemaking authority. He noted that the proposed rules recognized that any emergency actions taken by the Chief Judge must be taken in harmony with the Governor's lawful directives.

The Rules Committee approved the proposed rules with minor amendments and submitted its report to the Court of Appeals that day. The report noted that the authority of the Chief Judge "to assure, to the extent possible, the continued functioning of the courts and the judicial system" was "necessarily broad," but that "its exercise is limited to those things that prove necessary to assure reasonable access to the courts during and immediately following an emergency or other disabling event."[21]

---

[20] Minutes of Rules Committee Meeting, pp. 12-13 (March 13, 2020), available at https://mdcourts.gov/sites/default/files/minutes-rules/minutes20200313.pdf (https://perma.cc/MD6K-TMQ5).

[21] 204th Report of the Rules Committee, p. 3 (March 13, 2020), available at https://mdcourts.gov/sites/default/files/rules/reports/204threport.pdf (https://perma.cc/2F8P-ZA9T).

The following Monday, March 16, the Court of Appeals considered the rules in an open hearing. The Court adopted the proposed rules, which are codified at Maryland Rule 16-1001 *et seq.* as described in Part I.C.2 of this opinion. As noted there, those rules, among other things, delegated to the Chief Judge a conditional authority to extend deadlines that was substantially analogous to the authority that the Governor's March 12 order had granted to heads of the units of State and local governments for deadlines imposed by the laws that the agencies in those units administered.

5.        Administrative Orders Issued under Emergency Rules

*Closing Clerks' Offices*

On March 16, the Chief Judge issued an order that closed clerks' offices, with limited exceptions.[22] That order, which stated that it was effective immediately, noted the safety measures that the courts had taken thus far and found that there was "a threat of imminent and potentially lethal harm to vulnerable individuals who may come into contact with a … judicial facility and personnel" and that "[f]urther rapid escalation of the emergency requires more comprehensive measures to protect the health and safety of Maryland residents and Judiciary personnel." Citing the new emergency rules, the Chief Judge ordered that the courts, offices, and units in the Maryland Judiciary, and the offices of the clerks of the circuit courts and the District Court, "shall be restricted to emergency

---

[22] Administrative Order on Statewide Judiciary Restricted Operations Due to the COVID-19 Emergency (March 16, 2020), available at https://mdcourts.gov/sites/default/files/admin-orders-archive/20200316restrictedoperationsduetocovid19.pdf (https://perma.cc/F8S6-G5CS).

operations and closed with limited exceptions as described in this order beginning on March 17, 2020, through April 3, 2020, or until further order of the Chief Judge . . . ." The order specified that MDEC – the Judiciary's electronic case management system – "continues to be available for electronic filing and is required to be used for all MDEC counties."[23] Regarding "pleadings not required to be filed electronically," the order provided that "filings will be received by mail and may be received via drop boxes installed at local courthouses." The order further specified that "[o]ther than as set forth in this Administrative Order, deadlines established by Maryland statutes or rules remain in effect[.]"

*Extending Filing and Hearing Dates*

On April 3, 2020, the Chief Judge issued the initial order extending filing and hearing dates as a result of the pandemic.[24] Finding that the Covid-19 outbreak "continues to require comprehensive measures to protect the health and safety of Maryland residents and Judiciary personnel" and citing Article IV, §18 of the Maryland Constitution and Rule 16-1003(a)(7) as authority, she ordered that:

---

[23] At the time of the order, all jurisdictions except Baltimore City, Montgomery County, and Prince George's County were part of the MDEC electronic filing system.

[24] *See* Administrative Order on Emergency Tolling or Suspension of Statute of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters (April 3, 2020), available at https://mdcourts.gov/sites/default/files/admin-orders-archive/20200403emergencytollingorsuspensionofstatutesoflimitationsetc.pdf (https://perma.cc/N3QU-UBNT).

all statutory and rules deadlines related to the initiation of matters required to be filed in a Maryland state court, including statutes of limitations, shall be tolled or suspended, as applicable, effective March 16, 2020, by the number of days that the courts are closed to the public due to the COVID-19 emergency by order of the Chief Judge of the Court of Appeals[.]

The April 3 order further provided that "such deadlines shall be extended by a period to be described in an order by the Chief Judge of the Court of Appeals terminating the COVID-19 emergency period." The order also tolled deadlines regarding hearings in pending matters.[25]

*The April 24 Administrative Tolling Order*

On April 24, 2020, the Chief Judge issued the order to which the certified question in this case refers. That order was titled "Amended Administrative Order Clarifying the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters." A copy of that order appears in Appendix B to this opinion.[26] It elaborated on the April 3 order and recited, in a series of "whereas" clauses, the backdrop against which the tolling order was issued. In particular, it stated that the "comprehensive measures" required by the Covid-19 emergency, including "the stay-at-home orders issued by the Governor and restricted operations of the courts and judicial facilities," were "causing delays in the processing of routine matters," that the restrictions were having "a

---

[25] The Chief Judge amended the April 3 order on April 8 in ways not relevant here.

[26] Appendix B, as well as the other appendices to this opinion, may be found at the following link: https://perma.cc/J237-W89M.

widespread detrimental impact upon the administration of justice, impeding the ability of parties and potential litigants to meet with counsel, conduct research, gather evidence, and prepare complaints, pleadings, and responses," with the greatest impact on impoverished individuals, and that the impact of the pandemic "is so widespread as to have created a general and pervasive practical inability for certain deadlines to be met." The order reiterated that the tolling period would begin on March 16, 2020 and run for "the number of days that the courts are closed to the public due to the COVID-19 emergency."

The April 24 order made clear that the tolling provision applied to matters in both the trial and appellate courts[27] and contained a new provision explaining that the tolling provision applied regardless of whether a party made a specific showing of hardship as a result of the pandemic.[28]

---

[27] The order amended the language in the April 3 order regarding the tolling or suspending of statutory and rules deadlines related to the initiation of matters "required to be filed in a Maryland state court" to read "required to be filed in a Maryland state trial or appellate court."

[28] The order stated:

Justice requires that the ordering of the suspension of such deadlines during an emergency as sweeping as a pandemic be applied consistently and equitably throughout Maryland, and no party or parties shall be compelled to prove his, her, its, or their practical inability to comply with such a deadline if it occurred during the COVID-19 emergency to obtain the relief that this Administrative Order provides[.]

*Later Administrative Orders Relevant to Tolling*

During May 2020, the Chief Judge issued administrative orders setting forth additional findings on the impact of the pandemic-related restrictions on the courts.

A May 1, 2020 order concerning "Case Time Standards and Related Reports" stated that the pandemic "has forced the restriction of court operations and closure of facilities, requiring postponements of thousands of court events across the state," that the "restricted operations have resulted in a backlog of new and pending matters causing heretofore unforeseen delays in the resolution of cases that must be processed when the courts can be re-opened to routine operations," and that "it is anticipated that the courts will be required to reopen in phases and may continue to be constrained by safety measures . . . ."[29]

A May 4 order "Expanding and Extending Statewide Judiciary Restricted Operations"[30] addressed the mechanics of filing in the courts and ordered that the clerks of the various courts "shall continue to process" filings, whether electronic or otherwise, "to the extent possible with essential staff working onsite, staff teleworking, or both[.]" The

---

[29] Administrative Order on Case Time Standards and Related Reports for Fiscal Years 2020 and 2021 in Light of the COVID-19 Emergency (May 1, 2020), available at https://mdcourts.gov/sites/default/files/admin-orders-archive/20200501casetimestandardsandrelatedreports.pdf (https://perma.cc/9Z2W-5AER).

[30] Fourth Amended Administrative Order Expanding and Extending Statewide Judiciary Restricted Operations Due to the COVID-19 Emergency (May 4, 2020), available at https://mdcourts.gov/sites/default/files/admin-orders-archive/20200504fourthamendedadministrativeorderexpandingandextendingjudiciaryrestrictedoperations.pdf (https://perma.cc/89L4-N46A).

26

order further provided that another order issued that day would "control as to statutory and rules deadlines," except as to criminal jury trials. The latter order, "Further Clarifying the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters," retained the March 16, 2020 effective date of the earlier tolling orders and did not change the earlier orders in ways relevant here.

On May 22, the Chief Judge issued an order that superseded the April 24 tolling order. Among other things, the new order noted that clerks' offices would be reopened on July 20, 2020 – which would mark the end of the tolling period established in the previous orders. The order elaborated on the previous tolling orders by specifying that, for purposes of tolling the statutes and limitations and other deadlines related to the initiation of matters, the 126 days during which the clerks' offices were closed (March 16, 2020 until July 20, 2020) "do not count against the time remaining for the initiation of the matter." The May 22 order further extended the filing deadlines for the initiation of matters by an additional 15 days past the date on which clerks' office reopened and provided an example as to how a new filing deadline would be computed.

From June 2020 through March 2022, the revised administrative tolling order was amended 11 times. The amendments included some minor changes to the tolling order,[31]

---

[31] An amended order issued on November 24, 2020, added a definition of "matters" to which the tolling orders would apply "*nunc pro tunc*" – *i.e.*, the definition applied retroactively. That definition has no bearing on this case and its validity is not before us.

but largely consisted of updated cross-references to other administrative orders concerning the Covid-19 pandemic.[32] On March 28, 2022, the Chief Judge issued a "final" administrative tolling order; it recognized the termination of emergency operations in the Judiciary as of April 3, 2022.

A list of all the administrative tolling orders, and links to each, is contained in Appendix C to this opinion.[33]

6. Informing the Legislature about the Judiciary's Response to the Emergency

On May 7, 2020, the Chief Judge briefed the Senate Judicial Proceedings Committee on the Judiciary's response to the pandemic and specifically informed the committee about the various administrative orders, including the order tolling statutes of limitations and other filing deadlines. On May 28, the Chief Judge provided a similar briefing to the House Judiciary Committee and again described the administrative orders, including the tolling orders.

On January 8, 2021, the Chief Judge provided a further briefing to the Senate Judicial Proceedings Committee on "the Courts and Criminal Justice System During the COVID-19 Pandemic." Attached to the agenda of that meeting was a timeline of the

---

[32] According to the Judiciary website, a total of 107 administrative orders have been issued concerning various matters related to the pandemic emergency. The vast majority of those orders consist of minor revisions of a relatively small number of distinct orders. *See* https://mdcourts.gov/coronavirusorders (https://perma.cc/82HA-4Q32).

[33] Like the other appendices to this opinion, Appendix C may be found at the following link: https://perma.cc/J237-W89M.

Judiciary's response, including links to the April 3 and 24, 2020 tolling orders and many of the succeeding ones, and a statement that "[t]he Maryland Judiciary has maintained ongoing communication with the Maryland Department of Health, the Department of Public Safety and Correctional Services, Department of Juvenile Services, the Department of General Services, the Maryland State Bar Association and the Governor's Office of Legal Counsel."[34]

## III

### The Dispute between Liberty Mutual and Murphy Enterprises

The federal district court's certification order describes the lawsuit and proceedings there that gave rise to the certified question of law.

### A.      *Payment and Performance Bonds and Claims for Indemnification*

The facts of the underlying dispute do not affect our answer to the certified question. We describe them briefly for context. As indicated in the federal court's certification order,

---

[34] Maryland Senate Judicial Proceedings Committee, Briefing on the Courts and Criminal Justice System During the COVID-19 Pandemic, Agenda (Jan. 8, 2021), available at https://mgaleg.maryland.gov/2021RS/meeting_material/jpr%20-%20132545970372917678%20-%20JPR%20Briefing%20January%208.pdf (https://perma.cc/DZP4-5X4H).

Liberty Mutual[35] issued payment and performance bonds to Murphy Enterprises,[36] a concrete subcontractor on a construction contract for a Maryland State Police facility at Martin State Airport. Under a related indemnification agreement, Murphy Enterprises agreed to indemnify Liberty Mutual in certain circumstances. According to Liberty Mutual, Murphy Enterprises defaulted on its obligations at the construction project, resulting in claims against the payment and performance bonds. Liberty Mutual allegedly made payments to third parties as a result of those claims on five occasions during February 2017 through August 2017. According to Liberty Mutual, it is entitled to indemnification, including associated legal fees and other costs, from Murphy Enterprises for those payments.

### B.    *Litigation in Federal Court Concerning the Claims for Indemnification*

On July 2, 2020, Liberty Mutual sued Murphy Enterprises in a diversity action in federal court to recover the amounts allegedly owed. The complaint asserted a breach of contract claim and alleged that the damages exceeded the jurisdictional amount of $75,000 for purposes of the federal court's diversity jurisdiction. *Liberty Mutual Ins. Co. v. Jesse J. Murphy, et al.*, Civil Action No. 1:20-cv-01961-SAG (D. Md.).

---

[35] According to the complaint filed in the federal district court, Liberty Mutual brought the action as administrator and assignee of another entity that had issued the payment and performance bonds. For simplicity, we refer solely to Liberty Mutual in the text.

[36] Jesse J. Murphy, the individual defendant in the underlying case, is identified in the caption of the complaint in the federal district court as the president and resident agent of J.M. Murphy Enterprises, Inc.

Murphy Enterprises moved for dismissal of the complaint on the ground that the federal court lacked subject matter jurisdiction. It argued that several of the bond payments were made more than three years before the complaint was filed, that the claims related to those payments accrued outside the relevant period of limitations under Maryland law,[37] that the amount of those claims should not be included in computing the amount in controversy, and that the remaining claims did not meet the $75,000 jurisdictional threshold for a diversity action in federal court. Liberty Mutual countered that the claims were timely under Maryland law because the April 24, 2020 administrative tolling order had tolled the applicable statute of limitations. In reply, Murphy Enterprises argued that the tolling order exceeded this Court's authority under Maryland's Constitution to "adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in other courts of the State" and "constituted an unlawful assumption of legislative power." Liberty Mutual rejoined that the Court had properly exercised its emergency powers.

## C.     *Federal Court Certifies Question of Maryland Law*

On July 2, 2021, the federal district court issued a memorandum opinion in which it opined that the April 24, 2020 administrative tolling order was "substantive law" that tolled the statute of limitations under Maryland law and that would apply in a federal

---

[37] The general statute of limitations under Maryland law applicable to breach of contract claims is three years. CJ §5-101.

31

diversity action if "validly enacted."[38]  Accordingly, the court concluded that the validity of the administrative tolling order could be determinative of its jurisdiction over the litigation.  Two weeks later, the federal district court transmitted its certified question of law to this Court to resolve that issue.

The timeliness of certain claims asserted in Liberty Mutual's complaint in the federal court action – and the jurisdiction of the federal court over that action – thus may turn on whether the April 24, 2020 administrative tolling order was a proper exercise of powers under the Maryland Constitution.[39]  For that purpose, the federal court has certified a question of law to this Court, which we rephrase as follows:[40]

---

[38] Under the "*Erie* doctrine," a federal court is to apply the substantive law of the state in which it sits, including the state's choice-of-law rules, in an action brought under the federal court's diversity jurisdiction.  *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

[39] While we have no reason to dispute the federal court's view of how the validity of the administrative tolling order may affect its jurisdiction over the litigation, we express no opinion as to when the various claims asserted by Liberty Mutual actually accrued.

[40] The federal district court worded the certified question as follows:

> Did the Maryland Court of Appeals act within its enabling authority under, *inter alia*, the State Constitution and the State Declaration of Rights when its April 24, 2020 Administrative Order tolled Maryland's statutes of limitation in response to the COVID-19 pandemic?

We have reformulated the question to reflect that, as noted in Part II.B of this opinion, the April 24 administrative tolling order and the subsequent tolling orders that revised it were issued by the Chief Judge of the Court of Appeals, not the entire Court, and that those orders invoked rules adopted by the Court in addition to the Chief Judge's administrative authority as head of the Judicial Branch under the State Constitution.  Our rephrasing is simply an effort to present the important issue identified by the federal court more precisely in terms of Maryland law.  Our rephrasing also recognizes that the Chief Judge's administrative orders for criminal matters and other deadlines are not at issue in this matter.

Did the Chief Judge of the Court of Appeals of Maryland act within her authority under Maryland law when, in response to the Covid-19 pandemic, she issued Administrative Orders that tolled statutes of limitations related to civil cases?

The certification order designated Murphy Enterprises and Mr. Murphy as appellants in this Court and so Liberty Mutual is to be treated as appellee. Maryland Rule 8-305(b).

**IV**

**Discussion**

*A.      Certified Questions of Law*

Under the Maryland Uniform Certification of Questions of Law Act, CJ §12-601 *et seq.*, this Court may "answer a question of law certified to it by a court of the United States or by an appellate court of another state or of a tribe, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State." CJ §12-603; *see also* Maryland Rule 8-305. For that purpose, we may reformulate the question certified to us, as we have done in this case. CJ §12-604. In responding to a certification from another court, this Court resolves only issues of Maryland law, not questions of fact. *Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 681 (2000).

In responding to the certified question from the federal district court, it is not our role to decide the timeliness of the claims asserted by Liberty Mutual, to determine whether the amount in controversy satisfies the minimum for federal diversity jurisdiction, or to resolve Murphy Enterprises' motion to dismiss. Those are jobs for the federal court. Our

33

task is simply to answer the question of Maryland law posed to us to assist the federal court in resolving the questions before it.

The federal district court has asked whether the Chief Judge acted within her authority under Maryland law, including the Maryland Constitution, in issuing the administrative tolling order.[41] We answer that question in two steps.

First, we address whether there is authority under Maryland law for a Chief Judge to issue such an order in an emergency. The answer to that question is relatively straightforward and largely answered in the text of the administrative tolling order itself.

Second, we consider whether, regardless of the authority for issuing such an order, that order violated the Maryland Declaration of Rights. Murphy Enterprises contends that two provisions of the Declaration of Rights precluded that order: (1) Article 8, which guarantees separation of powers of the Executive, Legislative, and Judicial branches of the Maryland State government, and (2) Article 9, which prohibits the suspension of laws.

**B.** ***Whether the Chief Judge Had Authority to Issue the Order***

The administrative tolling order issued on April 24, 2020 was based on explicit authority provided by Maryland Rule 16-1003(a)(7) for the Chief Judge to "suspend, toll, extend, or otherwise grant relief from time deadlines … otherwise imposed by applicable statutes …." The Chief Judge's authority to take such action is triggered under Maryland

---

[41] Although our analysis and answer relate, as does the certified question of law, specifically to the April 24, 2020 administrative tolling order as it affected statutes of limitations governing civil actions, the same analysis applies to the later iterations of that provision in the amended administrative tolling orders issued by the Chief Judge.

Rule 16-1001 when the Governor declares a state of emergency – as the Governor had done in March 2020 prior to the issuance of the administrative tolling order. Those rules were adopted by the Court of Appeals, pursuant to the Court's rulemaking authority in Article IV, §18(a) of the Maryland Constitution after notice and a public hearing, albeit on a short timetable due to the pandemic emergency. There is no contention that the adoption of the rules was procedurally deficient.

The administrative tolling order also invoked Article IV, §18 of the Maryland Constitution and alluded to the Chief Judge's role as the "administrative head" of the Maryland judicial system. *See* Part I.A.1 of this opinion. The order was based in part on the Chief Judge's administrative responsibility to ensure that the courts were available to discharge their constitutional duty to adjudicate disputes. As the recitals in the administrative order indicate, at the time the order was issued in the spring of 2020, the pandemic had disrupted access to the courts and the ability of the State Judiciary to operate effectively. *See* Appendix B (text of April 24, 2020 order). In particular, the Chief Judge found that the measures the Judiciary had taken to respond to that emergency, in compliance with directives of the Governor and guidance from the federal Centers for Disease Control and Prevention, had had a "detrimental impact" that "imped[ed] the ability of parties and potential litigants to meet with counsel, conduct research, gather evidence, and prepare complaints, pleadings, and responses." *Id*. As a result, there was a "general and pervasive practical inability" to meet certain deadlines. *Id.* Moreover, the Chief Judge found that the pandemic had affected not only the ability of litigants to file pleadings – a

35

problem addressed at least in part by drop boxes and MDEC – but also the ability to prepare them in the first place.

In setting the amount of additional time that would be allowed for the "initiation of matters," section (a) of the order stated that the tolling period would run from March 16, 2020 – the date on which access to clerks' offices was first restricted – and consist of "the number of days that the courts are closed to the public due to the COVID-19 emergency."[42] A later administrative order set the end date of the tolling period as July 20, 2020, once the courts had been reopened.[43] Accordingly, the tolling period was explicitly tied to the period that the courts were closed to the public.

There thus was ample and explicit authority under Article IV of the State Constitution and the Maryland Rules for the Chief Judge to issue the administrative tolling order. The remaining issue is whether, as Murphy Enterprises argues, the order – and presumably the rules on which it was based – overreached the authority of the Judiciary by offending other provisions of the Maryland Constitution, in particular, Articles 8 and 9 of the Maryland Declaration of Rights.

---

[42] Other sections of the order applied a similar tolling period to deadlines in pending matters and made clear that the tolling applied universally without a requirement that litigants demonstrate a hardship in a particular case. *See* sections (b) and (c) of the April 24, 2020 order.

[43] Later revisions of the order also added a 15-day grace period to the tolling period. That was apparently based on Rule 16-1003(b), which, according to the accompanying Rules Committee Note, contemplates that some extensions of deadlines might remain in place for a reasonable time after termination of an emergency. *See* Part I.C.2 of this opinion.

*C.* *Whether the Order Violated Article 8 of the Maryland Declaration of Rights*

1.      Article 8 – Separation of Powers

*The Three Branches*

The Maryland Constitution establishes State government in three branches – Legislative, Executive, and Judicial – that are often referred to as "Departments" in that document. Article II, entitled "Executive Department," sets forth the powers of the Governor as to that branch; Article III, entitled "Legislative Department," concerns the General Assembly, its composition, and its powers; and Article IV, entitled "Judicial Department," concerns the composition and powers of the Judiciary. Article 8 of the Maryland Declaration of Rights sets forth a principle of separation of powers with respect to those branches. It states, in its entirety: "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

*Shared Authority*

Read literally, Article 8 appears to presuppose that each branch can, and must, carry out its functions without performing any of the functions assigned to another branch. However, this Court has long acknowledged that the "respective powers of the legislative, executive and judicial branches of government are not 'wholly separate and unmixed,'" *Crane v. Meginnis*, 1 G. & J. 463, 476 (1829).

In a well-known opinion concerning the relationship of the branches of government under the federal constitution, Justice Robert Jackson described how the principle of separation of powers does not isolate each branch in its own silo:

> The actual art of governing under our Constitution does not and cannot conform to judicial definitions of the power of any of its branches based on isolated clauses or even single Articles torn from context. While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity.

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring).

The Maryland Constitution recognizes on its face that the powers of the three branches of State government are often and inevitably intertwined. For example, the General Assembly has a role in elections and appointments to positions in the Executive Branch under Article II. *See* Article II, §6 (vacancies in offices of Governor and Lieutenant Governor), §10-11 (Senate confirmation of gubernatorial appointees). The Governor, as well as the General Assembly, plays a role in the enactment of legislation and in the organization of the Executive Branch. Article II, §17, 24. The Governor, as well as the General Assembly, has an important role in the State budget process. *See* Article III, §52; *Judy v. Schaefer*, 331 Md. 239, 261-62 (1993) (describing the Governor's role in the State budget process as "a major legislative-type role").

Other examples of shared authority necessarily occur in practice. The General Assembly, in enacting a statute, may delegate some legislative-type powers to an Executive Branch agency charged with administering the statute, so long as the statute provides

38

"sufficient safeguards" to guide the agency's exercise of those powers. *Department of Transportation v. Armacost*, 311 Md. 64, 72 (1987); *see also Department of Natural Resources v. Linchester*, 274 Md. 211, 218-20 (1975). The authority of one branch may overlap with those of another in some circumstances "because each branch may be concerned with different objectives." *Meyer v. State*, 445 Md. 648, 677 (2015) (recognizing the shared authority of the Executive and Judiciary branches to restrict an individual's driving privileges).

The separation of powers concept embodied in Article 8 accommodates the fact that, in addition to the specific powers and functions that the Constitution expressly grants to the three branches of government, each branch must as a practical matter "possess[] additional powers perforce implied from the right and obligation to perform its constitutional duties." *Attorney General v. Waldron*, 289 Md. 683, 690-91 (1981). Because each branch has those implied powers, which are also referred to as "incidental" or "inherent" powers, Article 8 "may constitutionally encompass a sensible degree of elasticity." *Id*. at 689 (quoting *Linchester*, 274 Md. at 220 (1975) (internal quotation marks omitted)). Accordingly, instead of interpreting Article 8 in a "literal sense," the Court has read it to "preserve to the one branch of government its *essential* functions" and to "prohibit any other branch from interfering with or usurping those functions." *McCulloch v. Glendening*, 347 Md. 272, 283-84 (1997) (internal punctuation and citations omitted)..

*The Limits of Sharing – "Usurping" the Powers of Another Branch*

Still, the meaning of Article 8 "cannot be stretched to a point where, in effect, there no longer exists a separation of governmental power, as the Maryland Constitution does

not permit a merger of the three branches of our State government, nor does it 'make any one of the three departments subordinate to the other, when exercising the trust committed to it.'" *Merchant v. State*, 448 Md. 75, 97 (2016) (quoting *Linchester*, 274 Md. at 220). Generally, in determining where that point might lie, the Court has looked to whether the branch whose power was challenged was "usurping" a power of another branch. *See, e.g., Schisler v. State*, 394 Md. 519 (2006) (holding invalid an action taken by the Legislature that fell within the Executive's purview). To the same effect, the Court has considered whether the performance of a function by one branch "encroach[ed]" on the other branch's powers, *see, e.g., Linchester,* 274 Md. at 220, and whether the branch in question had "a significant role" in the subject of the action, or whether, by contrast, that subject lay "solely and exclusively within the purview of [a different] branch." *McCulloch,* 347 Md. at 284. In considering whether one branch's action usurped a function properly belonging to another branch, the Court has considered not only the respective roles and functions of each branch as to the particular subject matter, but also the surrounding circumstances. *See, e.g.*, *Schisler*, 394 Md. at 542 (recounting the circumstances that led to the General Assembly's adoption of legislation that encroached on the Executive appointment power).

2.      Application to the Administrative Tolling Order

The certified question in the present case involves the respective powers and functions of all three branches. The issue here is whether the Judiciary had a "significant role" in the courts' application of statutes of limitations during an emergency or whether, instead, that subject fell solely within the purview of either the Legislative or the Executive branch such that the administrative tolling order interfered with the performance by the

40

other two branches of their essential functions.  In short, did the Chief Judge's administrative tolling order "usurp" another branch's power?

*Separation of Powers and the Judiciary*

This Court has addressed the Judiciary's place in Maryland's system of government in numerous contexts.  The cases can be sorted into four broad categories:  (1) those involving a legislative attempt to assign to the courts a task that had nothing to do with adjudicating cases, such as approving the accounts that county officers presented to a board of county commissioners for payment;[44] (2) those involving actions taken by, or requested of, a particular court in a particular proceeding that encroached upon a legislative or executive function;[45] (3) those that concern whether the adoption of a particular rule by the

---

[44] *Beasley v. Ridout*, 94 Md. 641(1902).  Other examples of such statutes include laws requiring a court to find facts, for referral to the Legislature for its action, as to whether a candidate for register of wills had violated the state Corrupt Practices Act, *Duffy v. Conaway*, 295 Md. 242, 261 (1983); requiring a court to appoint members of a board of visitors to a county jail, *Robey v. Prince George's County*, 92 Md. 150 (1900); or requiring the circuit court to receive petitions on whether to permit the sale of liquor in the county and order an election if the petitions met the required threshold, *Board of Supervisors Elections v. Todd*, 97 Md. 247 (1903).

With regard to legislation that limits the Judiciary's powers, the Legislature retains authority to limit the Judiciary's exercise of its powers to the extent that a power is "not an essential [one] inherent in the courts in the discharge of their constitutionally mandated duty to administer justice." *Commission on Medical Discipline v. Stillman,* 291 Md. 390, 402 (1981).

[45] *See, e.g., Getty v. Carroll County Board of Elections*, 399 Md. 710, 738 (2007) (holding that the circuit court had exceeded its powers in issuing a consent order implementing an agreement between a county resident and the election board to adopt a particular redistricting plan and explaining that the circuit court had "assumed a role that, in fact, constitutionally belongs to the legislative and executive departments of our government"); *Maryland-Nat'l Cap. Park & Plan. Comm'n v. Randall*, 209 Md. 18, 27

41

Court of Appeals exceeded the Court's authority under Article IV, §18(a) to adopt rules and regulations concerning "the practice and procedure" in the courts;[46] and (4) those involving whether a particular rule or other action by the Judiciary exceeded the rulemaking authority of the Court of Appeals under that same section concerning "the administration" of the courts.[47]

The last two categories of cases are the most instructive here. The certified question of law concerns the validity of an administrative order that invoked the Chief Judge's authority under both Article IV, §18(b) and the emergency rules, which themselves were based on the rulemaking authority of the Court of Appeals under Article IV, §18(a) ("The Court of Appeals from time to time shall adopt rules and regulations concerning the *practice and procedure* in and *the administration* of the appellate courts and in the other courts of this State …" (emphasis added)).

---

(1956) (affirming the circuit court's dismissal of a petition to enjoin the Secretary of State from transmitting a vetoed bill back to the legislative house of origin).

[46] *See, e.g.*, *Consol. Const. Servs., Inc. v. Simpson*, 372 Md. 434, 448-49 (2002) (provision of rule governing garnishment actions effected a substantive change in the cause of action that exceeded the Court's rulemaking authority).

[47] *See, e.g.*, *Whitaker v. Prince George's County*, 307 Md. 368 (1986) (rule granting power to assign cases to a circuit court administrative judge was within the rulemaking power under §18(a)).

*Whether the rules and administrative tolling order fell within the Court's rulemaking powers related to "practice and procedure"*

The "practice and procedure" category includes cases in which the Court held invalid either its own rule or a local rule adopted by a circuit court with rulemaking authority, and cases in which the Court held instead that the rule fell properly within the Judicial Branch's role in regulating practice and procedure in the courts. In a case in which a rule was found to be invalid, the Court held that it had exceeded its power and had encroached on the General Assembly's legislative power by adopting a rule that added a substantive element to attachment and garnishment proceedings. Those proceedings, the Court explained, are "creatures of statute," such that the "substance of the statute . . . is the province of the Legislature and not the courts." *Consol. Const. Servs., Inc. v. Simpson*, 372 Md. 434, 451–52 (2002); *see also State v. Kanaras*, 357 Md. 170, 183 (1999) ("It is doubtful that this Court's rule-making authority would extend to the creation of a separate cause of action.").

A statute of limitations, however, neither creates a right of action nor pertains to the merits of a cause of action; rather, it regulates the plaintiff's exercise of that right. *See Park Plus, Inc. v. Palisades of Towson, LLC,* ___ Md. ___ (March 25, 2022), slip op. at 18 ("Statutes of limitations have historically been considered procedural, not substantive defenses, and are generally understood to extinguish the *remedy* for enforcing a right, not the right itself.") (emphasis in original); *see also Foos v. Steinberg*, 247 Md. 35, 38 (1967); *Snyder v. Cearfoss*, 187 Md. 635, 639 (1947); *Young v. Mayne Realty Co., Inc*., 48 Md. App. 662, 664-66 (1981).

43

The tolling of the statute of limitations thus falls within the field of procedural matters in which the Court may play a role. Further, as noted in Part I.B. of this opinion, the Court *has* played a role on the subject, both by rule and through the development in case law of doctrines applicable to broad categories of cases. As noted earlier, Rule 2-101(b) tolls the statute of limitations for filing in a Maryland court for a plaintiff whose lawsuit was initially filed in federal court or a court of another state, but dismissed in that forum on jurisdictional or certain other grounds. *See Turner v. Kight*, 406 Md. 167, 190 (2008) (applying Rule 2-101(b) in conjunction with a federal statute); *see also Christensen*, 394 Md. at 242 (referring to Rule 2-101(b), stating, "this Court not only has the authority to adopt rules that alter the operation of existing statutes of limitations, it has exercised its rulemaking authority to adopt such a rule"). That rule, adopted to preserve a plaintiff's ability to litigate an action timely brought in federal court but dismissed there on certain grounds not bearing on the merits, illustrates that "practice and procedure" may include generally-applicable measures to ensure that the courts' procedures are fair to litigants.

Similar policy goals underlie the various judicially-created doctrines that extend the deadline for filing suit for various categories of claimants, such as the "discovery rule" and "judicial tolling." In creating such categorical exceptions, the Court has looked to the several interests accommodated in a statute of limitations. For example, in extending the discovery rule to latent disease claims that the plaintiff could not have discovered within the applicable time period, the Court concluded that "avoiding possible injustice in these situations outweighed interests in repose and administrative expediency." *Hecht v. Resol. Tr. Corp.*, 333 Md. 324, 335 (1994) (recounting the Court's development of the discovery

rule). And, the Court has applied the doctrine of "judicial tolling" when "(1) there is persuasive authority or persuasive policy considerations supporting the recognition of the tolling exception, and (2) recognizing the tolling exception is consistent with the generally recognized purposes for the enactment of statutes of limitations." *Christensen*, 394 Md. at 238.[48]

Certainly, the tolling of a statute of limitations is a subject that also lies within the sphere of the legislative branch; as this Court has noted, "the harshness" of the general rule that the limitations period runs upon the occurrence of the alleged wrong has "led to the creation of both legislative *and* judicial exceptions." *Poffenberger*, 290 Md. at 634 (emphasis added). One such legislated exception is provided by CJ §5-202, which tolls the pertinent statute of limitations on the claims against a defendant who files a "petition in insolvency" for a period of time between "the filing and the dismissal" of such a petition. *See Ali v. CIT Tech. Fin. Servs., Inc.*, 416 Md. 249, 252, 259 (2010) (construing CJ §5-202). Another is set forth in PS §14-207, which provides for the tolling of the statute regarding persons in emergency management or, during the emergency period, persons suffering certain injuries or damages. And, at times, the Legislature has codified a judicially-created exception by amending a statute to include it, or creating a new statutory cause of action. *See, e.g.*, *Piper v. Jenkins*, 207 Md. 308, 316 (1955) (describing a statutory amendment that extended the judicially-created fraud exception to cases filed at law).

---

[48] The federal district court did not ask, and we express no opinion on, whether judicial tolling would be appropriate in this particular case.

45

Just as certainly, however, the General Assembly's authority to enact legislation on the subject of tolling does not deprive the Judicial Branch of its constitutional authority to adopt rules that regulate the method by which litigants exercise a right of action. The shared authority of the two branches in that broad field – and the back-and-forth between the two branches that may occasionally and constitutionally occur – can be seen in *Hensley v. Bethesda Sheet Metal Co.*, 230 Md. 556 (1963). That case also illustrates the principle under Article IV, §18 that, when a rule and statute conflict in this area, the last enacted provision prevails.[49]

The decision in *Hensley* concerned the procedure by which a workers' compensation claimant was to seek judicial review of an adverse decision of the Workers' Compensation Commission. As of 1959, a claimant was required by a longstanding statute to serve notice of such an appeal on the Commission as a prerequisite to obtaining judicial review. That year, the Court adopted a general rule for appeals from administrative agencies – which would include an appeal of a Commission decision.[50] That rule required a claimant to note an appeal in circuit court and did not require service on the administrative tribunal. In 1960, in the course of amending the statute pertaining to the Commission, it

---

[49] That principle is akin to the direction that the General Assembly has given for resolving contradictory provisions in its own enactments. *See* Maryland Code, General Provisions Article, §1-207.

[50] At that time, the Maryland Rules referred to an "appeal" of an administrative agency decision. Currently, the rules refer, more accurately, to "judicial review" of such decisions. See Maryland Rule 7-201 *et seq.*

46

repealed and re-enacted that statute, which still included the requirement that a claimant note an appeal with the Commission. In 1962, the Court re-promulgated the rules concerning appeals from administrative agencies, including the rule regarding the prerequisites for pursuing such an appeal, thereby superseding once again the legislative provision concerning service on the Commission. *Id*. at 559-60. In *Hensley*, a claimant had followed the statutory procedure while appealing an adverse Commission decision in 1961; the circuit court dismissed that appeal for failing to comply with the court rule. This Court reversed that decision, holding that the claimant had properly followed the statutory procedure during the interlude when the statute prevailed over the rule. The Court explained that it had, "pursuant to the constitutional grant of power, promulgated [the rules] to govern the method, manner and mechanics of appeals from administrative agencies." *Id*. Just as constitutionally, the Legislature had enacted legislation that overrode the Court's rules on that subject.[51]

The Court's adoption of rules providing for the tolling of the statute of limitations in the event of an emergency fell within the Court's constitutional authority to adopt rules

---

[51] Another example of the concurrent roles of the two branches in procedural matters involved the regulation of appeals of a court's denial of a request for an injunction. As related in *Funger v. Mayor & Council of Town of Somerset*, 244 Md. 141 (1966), a statute had made such denials immediately appealable; the Court of Appeals adopted a rule that superseded the statute as to certain actions; and the Legislature then "restored the situation to where it was" before the Rule was adopted. The Court explained, "[i]n enacting [that law,] the Legislature was concerned directly and precisely with the interplay of its statutes and the rules of the Court of Appeals. In that enactment it repealed statutes which were made ineffective or obsolete by the new rules and preserved or newly enacted the statutes it desired to be still effective." 244 Md. at 150.

of practice and procedure. It is also evident that the tolling order itself did not usurp powers belonging solely to another branch. As set forth in Part II of this opinion, the Chief Judge issued the administrative tolling order against the backdrop of the rapidly-spreading Covid-19 outbreak in Maryland. The tolling order addressed the effect of the emergency on the ability of litigants and attorneys to comply with filing deadlines – a matter that the Governor had already addressed in substantially similar terms for deadlines administered by Executive Branch agencies[52] – and the ability of Judiciary personnel to process pleadings – an issue that the Executive Branch had analogously addressed in its policy applicable to employees in that branch.[53] When the Chief Judge's pandemic tolling order is viewed in that context, and also viewed against the backdrop of the Governor's orders limiting the movements of the public, the Judiciary's role as to litigants and members of the bar, the representation of the Legislature on the Rules Committee, and, particularly, the ongoing communications between the Judiciary and the Executive and Legislative branches, it becomes apparent that the administrative tolling order did not usurp a function

---

[52] In its brief, Liberty Mutual argues that the Chief Judge acted "under the ambit" of the Governor's executive order declaring a state of emergency, suggesting that the Governor had delegated authority to issue a tolling order to the Chief Judge. However, as shown by the administrative order, the Chief Judge did not purport to act under a delegation from the Governor; instead, she expressly relied on the constitutional grant of administrative authority to the Chief Judge and of rulemaking authority to the Court of Appeals. As outlined in Part I.C.2 of this opinion, the pertinent rules required the Chief Judge to act "in harmony" with the measures taken in the Executive Branch and to consult with the Governor and other officials in exercising the powers specified in the rules.

[53] As a general rule, the Governor's executive authority does not extend to employees in other branches. SPP §2-201. Nor does the Public Safety Article direct the Executive Branch to coordinate activities in the Judicial Branch in the event of an emergency.

solely belonging to another branch. Instead, the order not only comported with the Executive Branch policy of limiting interactions among the public but also served the statutory purposes of the statute of limitations by affording litigants adequate time in which to prepare and file their pleadings and by avoiding the filing of inadequately-investigated lawsuits in the courts.

*Whether the tolling order and enabling rules fell within the Court's power over the administration of the courts*

The second category of instructive Article 8 cases is comprised of those that address the validity of a rule or other Judiciary action regarding the administration of the courts – a power that the Constitution grants to both the Court of Appeals and the Chief Judge. The Court described that power in *Whitaker v. Prince George's County*, 307 Md. 368, 375-76 (1986). There, the petitioner challenged the validity of a rule[54] that authorized the administrative judge of each circuit to "assign any judge of his judicial circuit to sit as a judge of the Circuit Court of any county in the judicial circuit, in any specified case or cases or for any specified time." *Id.* Holding that the rule was consistent with the Court's general power under Article IV, §18(a) to adopt rules concerning the administration of the courts, as well as §18(b) concerning the Chief Judge's authority to make assignments, the Court stated that "whether it be by the Court of Appeals directly or the circuit

---

[54] Former Maryland Rule 1202(b)(1). That rule, with minor amendments, has been re-codified and now appears as Maryland Rule 16-108(c). *See also Strickland v. State*, 407 Md. 344, 360 (2009).

49

administrative judge as its alter ego in the circuit, this power and authority encompasses all facets of the internal management of our courts." *Id*. at 376.

There are many facets of the internal management of the Judiciary, among them the management of Judiciary personnel, operations, and facilities. Additionally, the Court holds the incidental (or implied or inherent) power to regulate the legal profession, because lawyers are officers of the Court. *See, e.g*., *Waldron*, 289 Md. 683 (discussing the Judiciary's role with regard to members of the Maryland bar). In both areas, the authority of the Judiciary and, as applicable, its administrative head, is not only inherent, but also expressly recognized by statute. *See, e.g.,* CJ §1-201(a) (providing that the Court's power to issue rules and regulations concerning practice and procedure and judicial administration in the courts is to be "liberally construed"); SPP §2-201 (stating that employees in the Judicial Branch are governed by that branch's personnel policies).

Both the administrative tolling order and the emergency rules fell within the administrative powers assigned to the Judicial Branch. As noted above, the Chief Judge's April 24, 2020 order stated the comprehensive impact that the pandemic-related restrictions, including the Governor's stay-at-home orders and the restricted operations of the courts, were having on logistical matters such as the processing of routine matters and the ability of parties and potential litigants to meet with counsel, conduct research, and prepare pleadings. Under those emergency circumstances, the Chief Judge's order was within her authority as administrative head of the Courts. And, as noted above, the Chief Judge issued orders that followed on, and did not contravene, the Executive Branch orders that governed the general public, State buildings, and Executive Branch personnel.

50

Further, the Judiciary conferred with Executive Branch agencies throughout, and the Chief Judge reported those actions to committees of both houses of the General Assembly – which had retained for itself in statute, but did not exercise in these circumstances, the power to terminate a declared state of emergency.

*Whether the order or rules "usurped" the function of another Branch*

The Chief Judge's April 24, 2020 administrative tolling order did not usurp the Legislative Branch's powers. The rules on which that order was based fell within the Court's "practice and procedure" and administrative functions under the Maryland Constitution. The order was not an expression of a Judicial policy preference for a period of limitations different from that set by the Legislature. Rather, in a sense, it was an effort to respect the period of limitations set by the General Assembly by ensuring that the administrative obstacles faced by litigants and the courts during the early days of the pandemic did not effectively and retroactively shorten the period of limitations in those cases in which the period would expire while the courts were closed. Thus, while an order tolling a statute of limitations would not ordinarily be an administrative matter, in this instance there were good grounds for treating it as such. Given the Court's role regarding the procedural aspects of the statute of limitations, and given the Judiciary's coordination with the Executive Branch with regard to the pandemic response, the rule and order also did not encroach upon the Executive Branch's emergency powers.

***D.*** ***Whether the Order Violated Article 9 of the Maryland Declaration of Rights***

1. Article 9 – Prohibition Against Suspension of Laws

Article 9 of the Maryland Declaration of Rights provides "[t]hat no power of suspending Laws or the execution of Laws, unless by, or derived from the Legislature, ought to be exercised, or allowed." This provision has been part of the Maryland Declaration of Rights since 1776 and was derived from the English Bill of Rights of 1689. *See* Dan Friedman, The Maryland State Constitution: A Reference Guide (Praeger 2006) 20. It has never been construed by this Court.[55] An earlier treatise on the Maryland Constitution suggests why there is a paucity of case law concerning Article 9. *See* Alfred S. Niles, Maryland Constitutional Law (Hepbron & Haydon 1915). Niles classified the various articles of the Maryland Declaration of Rights into four different categories. *Id*. at 12-14. In his view, Article 9 fell into a category of "(d)eclarations of abstract principles whose sole practical effect is to declare from what standpoint the law shall be considered and in what spirit interpreted …. [I]n reality they amount to little more than a statement as to the *point of view* from which the court is expected to look at any particular concrete question." *Id*. at 12, 22 (emphasis in original).

---

[55] The Court of Special Appeals has had occasion to consider the application of Article 9 on two occasions and held that it did not apply in those cases. *See Paula v. Mayor & City Council of Baltimore*, 253 Md. App. 566, ___ (2022) (affirming circuit court decision that Article 9 did not confer standing on plaintiff seeking to challenge alleged actions and inactions of police civilian review board); *Doctor's Hospital of Prince George's County v. Maryland Health Resources Commission*, 65 Md. App. 656, 675-76 (1986) (Commission decision not to issue certificate of need to hospital, despite a provision in the State Health Plan contemplating additional beds in the county, was not an "illegal moratorium" that violated Article 9).

2.      Application to this Case

Murphy Enterprises does not articulate why it believes the administrative tolling order violated Article 9 other than to quote the language of the constitutional provision. Even if Article 9 is read literally to provide a specific safeguard as opposed to an abstract principle of construction, it must be read in harmony with the rest of the State Constitution of which it is part.  A "basic rule of construction" applicable to the principles stated in the Maryland Declaration of Rights is "that ordinarily the specific prevails over the general." *State v. Smith*, 305 Md. 489, 511 (1986).  In other words, a specific power conferred in the State Constitution prevails over a general principle stated in the Declaration of Rights.  *Id.*[56] As outlined earlier in this opinion, the State Constitution specifically assigns to the Judiciary the power to make rules and regulations to govern the practice and procedure and judicial administration in the courts of the State.

As explained above, the Court's adoption of the emergency rules, which authorized the issuance of an administrative tolling order such as the one that is the subject of the certified question, was inherently within the Court's constitutional rulemaking power.  The Constitution also designates the Chief Judge as administrative head of the Judiciary.  The specific constitutional grants of rulemaking and administrative powers to the Court of Appeals and Chief Judge, respectively, would prevail over the more general principle

---

[56] In *Smith*, the defendant argued that the issuance of a statement of charges by a District Court Commissioner violated the separation of powers guaranteed by Article 8 of the Maryland Declaration of Rights.  The Court rejected that argument, holding that the specific powers conferred on commissioners under Article IV, §41G of the Constitution prevailed over the general principle of separation of powers stated in Article 8.

stated in Article 9.  In any event, the adoption of a new rule under the Court's rulemaking power, and the issuance of an administrative order based on that rule, do not appear to fit the description of a "suspension" of the laws.

Furthermore, even if the tolling of a period of limitations could be characterized as a "suspension" of a law, in the circumstances of this emergency, it was consistent with legislative policies and actions.  The Legislature has granted certain emergency powers to the Governor that include suspending State and local laws and has specified emergency exemptions in particular statutes.  Constitutionally, however, the Chief Judge, not the Governor, is the administrative head of the Judiciary.  As an incident of its core constitutional powers, the Judiciary must be able to address emergencies affecting judicial operations and personnel, whether those emergencies be local and brief, such as a hurricane or public safety event, or widespread, such as the pandemic.  Particularly when such powers are exercised consistently with the statutorily-authorized actions taken by the Governor upon the Governor's declaration of a state of emergency and coordinated with the other branches of State government, including the Legislature, it cannot be said that there is a "suspension" of laws that is not in some way "derived from the Legislature."

## E.     Summary

The certified question of law presents a novel question as to the extent of the Judiciary's authority to manage the State's court system, including its personnel, the public, and court facilities, during a prolonged state of emergency that, at various times, has affected many litigants' ability to marshal facts and find, engage, and meet with lawyers; has affected lawyers' ability to meet with clients and assess their cases, gather facts and

records, and prepare pleadings; and has affected the ability of the court system to serve and docket pleadings and set scheduling orders. Under such circumstances, the strict application of the usual tolling rules in the various statutes of limitations would in many cases have resulted in the filing of a premature complaint, not founded on sufficiently-confirmed facts, or in an untimely filing, or in an abandoned cause of action, or in more interactions among people at risk to the public health. None of these results would have served the cause of justice; none would have promoted judicial efficiency; none would have been necessary to effectuate the purposes of such statutes; and all would have had an impact on the administration of, and practice and procedure in, the judicial system. We therefore conclude that the tolling order fell within the scope of the Judiciary's role in Maryland government, did not usurp another branch's power, and did not contravene the Maryland Declaration of Rights.

## V

### Conclusion

The federal district court has asked whether the Chief Judge of the Court of Appeals acted within her authority and consistently with the Maryland Constitution when she issued an administrative order temporarily tolling statutes of limitations under Maryland law with respect to civil actions during the Covid-19 pandemic.

For the reasons set forth in this opinion, the answer to that question is "yes."

> CERTIFIED QUESTION OF LAW ANSWERED AS SET FORTH ABOVE. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.

# Appendix A

List of and Links to Selected Documents
Concerning Actions Taken by the Executive Branch
Related to the Covid-19 Pandemic

**List of and Links to Selected Documents**
**Concerning Actions Taken by the Executive Branch**
**Related to the Covid-19 Pandemic**


February 27, 2020          Governor Hogan Announces Additional Steps to Protect
                           Marylanders from Coronavirus
                           https://governor.maryland.gov/2020/02/27/governor-hogan-
                           announces-additional-steps-to-protect-marylanders-from-
                           coronavirus/ (https://perma.cc/5SK3-843F)


February 27, 2020          Office of Personnel Services and Benefits Policy, Pandemic
                           Flu and Other Infectious Diseases:  Attendance and Leave
                           https://dbm.maryland.gov/employees/Documents/PandemicFl
                           uAttendanceLeavePolicy.pdf (https://perma.cc/E3ED-U46F)


March 5, 2020              Declaration of State of Emergency and Existence of
                           Catastrophic Health Emergency – COVID-19
                           https://governor.maryland.gov/wp-
                           content/uploads/2020/03/Proclamation-COVID-19.pdf
                           (https://perma.cc/M45P-7U2B)


March 12, 2020             Order of the Governor Prohibiting Large Gatherings and
                           Events and Closing Senior Centers
                           https://governor.maryland.gov/wp-
                           content/uploads/2020/03/Prohibiting-Large-Gatherings.pdf
                           (https://perma.cc/4TZF-3UJA)


March 12, 2020             Order of the Governor Extending Certain Licenses, Permits,
                           Registrations, and Other Governmental Authorizations, and
                           Authorizing Suspension of Legal Time Requirements
                           https://governor.maryland.gov/wp-
                           content/uploads/2020/03/Licenses-Permits-Registration.pdf
                           (https://perma.cc/P9UB-2PC5)

March 23, 2020          Order of the Governor Number 20-03-23-01 Amending and
                        Restating the Order of March 19, 2020, Prohibiting Large
                        Gatherings and Events and Closing Senior Centers, and
                        Additionally Closing All Non-Essential Businesses and Other
                        Establishments
                        https://governor.maryland.gov/wp-
                        content/uploads/2020/03/Gatherings-THIRD-AMENDED-
                        3.23.20.pdf (https://perma.cc/CZR5-6RET)

March 30, 2020          Order of the Governor Number 20-03-30-01 Amending and
                        Restating the Order of March 23, 2020, Prohibiting Large
                        Gatherings and Events and Closing Senior Centers, and All
                        Non-Essential Businesses and Other Establishments, and
                        Additionally Requiring All Persons to Stay at Home
                        https://governor.maryland.gov/wp-
                        content/uploads/2020/03/Gatherings-FOURTH-AMENDED-
                        3.30.20.pdf (https://perma.cc/ADA2-7HJZ)

# Appendix B

Text of April 24, 2020 Administrative Tolling Order

IN THE COURT OF APPEALS OF MARYLAND

AMENDED ADMINISTRATIVE ORDER

CLARIFYING THE EMERGENCY TOLLING OR SUSPENSION OF

STATUTES OF LIMITATIONS AND STATUTORY AND RULES DEADLINES

RELATED TO THE INITIATION OF MATTERS

AND CERTAIN STATUTORY AND RULES DEADLINES IN PENDING MATTERS

WHEREAS, Pursuant to the Maryland Constitution, Article IV § 18, the Chief Judge of the Court of Appeals is granted authority as the administrative head of the Judicial Branch of the State; and

WHEREAS, The Court of Appeals has approved Chapter 1000 of Title 16 of the Maryland Rules of Practice and Procedure setting forth the emergency powers of the Chief Judge of the Court of Appeals; and

WHEREAS, In instances of emergency conditions, whether natural or otherwise, that significantly disrupt access to or the operations of one or more courts or other judicial facilities of the State or the ability of the Judiciary to operate effectively, the Chief Judge of the Court of Appeals may be required to determine the extent to which court operations or judicial functions shall continue; and

WHEREAS, Due to the outbreak of the novel coronavirus, COVID-19, and consistent with guidance issued by the Centers for Disease Control, an emergency exists that poses a threat of imminent and potentially lethal harm to individuals who may come into contact with a court or judicial facility and personnel; and

WHEREAS, The COVID-19 emergency continues to require comprehensive measures to protect the health and safety of Maryland residents and Judiciary personnel and comply with the guidelines of the Centers for Disease Control, including the stay-at-home orders issued by the Governor and restricted operations of the courts and judicial facilities, and is causing delays in the processing of routine matters; and

WHEREAS, The impact of the restrictions required to respond to the COVID-19 pandemic has had a widespread detrimental impact upon the administration of justice, impeding the ability of parties and potential litigants to meet with counsel, conduct

research, gather evidence, and prepare complaints, pleadings, and responses, with the impact falling hardest upon those who are impoverished; and

WHEREAS, the detrimental impact of the COVID-19 pandemic is so widespread as to have created a general and pervasive practical inability for certain deadlines to be met,

NOW, THEREFORE, I, Mary Ellen Barbera, Chief Judge of the Court of Appeals and administrative head of the Judicial Branch, pursuant to the authority conferred by Article IV, § 18 of the Maryland Constitution, do hereby order this 24th day of April 2020, that:

(a)    Pursuant to Maryland Rule 16-1003(a)(7), all statutory and rules deadlines related to the initiation of matters required to be filed in a Maryland state trial or appellate court, including statutes of limitations, shall be tolled or suspended, as applicable, effective March 16, 2020, by the number of days that the courts are closed to the public due to the COVID-19 emergency by order of the Chief Judge of the Court of Appeals; and

(b)    Justice requires that the ordering of the suspension of such deadlines during an emergency as sweeping as a pandemic be applied consistently and equitably throughout Maryland, and no party or parties shall be compelled to prove his, her, its, or their practical inability to comply with such a deadline if it occurred during the COVID-19 emergency to obtain the relief that this Administrative Order provides; and

(c)    Pursuant to Maryland Rule 16-1003(a)(7), all statutes and rules deadlines to hear pending matters shall be tolled or suspended, as applicable, effective March 16, 2020, by the number of days that the courts are closed to the public due to the COVID-19 emergency by order of the Chief Judge of the Court of Appeals; and

(d)    Such deadlines further shall be extended by a period to be described in an order by the Chief Judge of the Court of Appeals terminating the COVID-19 emergency period; and

(e)    Any such filings made within the period to be described in (c) shall relate back to the day before the deadline expired; and

(f)    To the extent that this Administrative Order conflicts with extant Administrative Orders or local administrative orders, this Administrative Order shall prevail,

except as provided in Section (t) of the Second Amended Administrative Order Expanding Statewide Judiciary Restricted Operations Due to the COVID-19 Emergency, filed on April 14, 2020, and the Administrative Order on Expanding the Statewide Suspension of Jury Trials and Suspending Grand Juries, filed April 3, 2020; and

(g)    This Administrative Order will be revised as circumstances warrant.

/s/ Mary Ellen Barbera
Mary Ellen Barbera
Chief Judge
Court of Appeals of Maryland

Filed: April 24, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.

/s/ Suzanne C. Johnson
Suzanne C. Johnson
Clerk
Court of Appeals of Maryland

Suzanne Johnson
2020-04-24 16:30-04:00

Suzanne C. Johnson, Clerk

# Appendix C

List of and Links to
The Initial and Amended Administrative Tolling
Orders Related to the Covid-19 Pandemic

# List of and Links to
# the Initial and Amended Administrative Tolling Orders
# Related to the Covid-19 Pandemic


### *Initial Tolling Order Setting Date for Beginning of Tolling Period*

April 3, 2020        Administrative Order on Emergency Tolling or Suspension of
                     Statutes of Limitations and Statutory and Rules Deadlines Related to
                     the Initiation of Matters and Certain Statutory and Rules Deadlines
                     in Pending Matters
                     https://mdcourts.gov/sites/default/files/admin-orders-
                     archive/20200403emergencytollingorsuspensionofstatutesoflimitatio
                     nsetc.pdf (https://perma.cc/N3QU-UBNT)

April 8, 2020        Amended Administrative Order on Emergency Tolling or
                     Suspension of Statutes of Limitations and Statutory and Rules
                     Deadlines Related to the Initiation of Matters and Certain Statutory
                     and Rules Deadlines in Pending Matters
                     https://mdcourts.gov/sites/default/files/admin-orders-
                     archive/20200408emergencytollingorsuspensionofstatuesoflimitatio
                     nsamended.pdf (https://perma.cc/58XN-VEQR)


### *Detailed Tolling Order and its Amendment*

* April 24, 2020     Amended Administrative Order Clarifying the Emergency Tolling or
                     Suspension of Statutes of Limitations and Statutory and Rules
                     Deadlines Related to the Initiation of Matters and Certain Statutory
                     and Rules Deadlines in Pending Matters
                     https://mdcourts.gov/sites/default/files/admin-orders-
                     archive/20200424clarifyingemergencytollingorsuspensionofstatuteso
                     flimitationsamended.pdf (https://perma.cc/GC97-6R5Q)

May 4, 2020          Amended Administrative Order Further Clarifying the Emergency
                     Tolling or Suspension of Statutes of Limitations and Statutory and
                     Rules Deadlines Related to the Initiation of Matters and Certain
                     Statutory and Rules Deadlines in Pending Matters
                     https://mdcourts.gov/sites/default/files/admin-orders-
                     archive/20200504furtherclarifyingstatutesoflimitations.pdf
                     (https://perma.cc/9C9K-W7PB)


*This order is the subject of the certified question of law.

1

*Amended Detailed Tolling Order Setting End Date of Period*

May 22, 2020      Revised Administrative Order on the Emergency Tolling or
                  Suspension of Statutes of Limitations and Statutory and Rules
                  Deadlines Related to the Initiation of Matters and Certain Statutory
                  and Rules Deadlines in Pending Matters
                  https://mdcourts.gov/sites/default/files/admin-orders-
                  archive/20200522revisedemergencytollingorsuspensionofstatutesofli
                  mitations.pdf (https://perma.cc/T3KQ-J5S3)


*Revisions of Tolling Order Largely Changing Cross References to Other Orders*

June 3, 2020      Second Revised Administrative Order on the Emergency Tolling or
                  Suspension of Statutes of Limitations and Statutory and Rules
                  Deadlines Related to the Initiation of Matters and Certain Statutory
                  and Rules Deadlines in Pending Matters
                  https://mdcourts.gov/sites/default/files/admin-orders-
                  archive/20200603secondrevisedemergencytollingorsuspensionofstat
                  utesoflimitationanddeadlines.pdf  (https://perma.cc/ML58-EEMC)

October 2, 2020   Third Revised Administrative Order on the Emergency Tolling or
                  Suspension of Statutes of Limitations and Statutory and Rules
                  Deadlines Related to the Initiation of Matters and Certain Statutory
                  and Rules Deadlines in Pending Matters
                  https://mdcourts.gov/sites/default/files/admin-orders-
                  archive/20201002thirdrevisedorderonemergencytollingorsuspension
                  ofstatutesoflimitationsandstatutoryandrulesdeadlines.pdf
                  (https://perma.cc/ML8N-CEQ3)

November 12, 2020 Fourth Revised Administrative Order on the Emergency Tolling or
                  Suspension of Statutes of Limitations and Statutory and Rules
                  Deadlines Related to the Initiation of Matters and Certain Statutory
                  and Rules Deadlines in Pending Matters
                  https://mdcourts.gov/sites/default/files/admin-orders-
                  archive/20201112fourthrevisedorderonemergencytollingorsuspensio
                  nofstatutesoflimitationsandstatutoryandrulesdeadlines.pdf
                  (https://perma.cc/SJ23-RD4K)

November 24, 2020 Fifth Revised Administrative Order on the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters https://mdcourts.gov/sites/default/files/admin-orders-archive/20201124fifthrevisedemergencytollingorsuspensionofstatutesoflimitationsandstatutoryandrulesdeadlines.pdf (https://perma.cc/Z4AJ-AYDL)

December 22, 2020 Sixth Revised Administrative Order on the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters https://mdcourts.gov/sites/default/files/admin-orders-archive/20201222sixthrevisedadministrativeorderonemergencytollingorsuspensionofstatuesoflimitationsandstatutoryandrulesdeadlines.pdf (https://perma.cc/Y4YC-CWWL)

February 2, 2021 Seventh Revised Administrative Order on the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters https://mdcourts.gov/sites/default/files/admin-orders-archive/20210202seventhrevisedadministrativeorderontheemergencytollingorsuspensionofstatutesoflimitationsandstatutoryandrulesdeadlinesetc.pdf (https://perma.cc/YTB3-GDB2)

February 16, 2021 Eighth Revised Administrative Order on the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters https://mdcourts.gov/sites/default/files/admin-orders-archive/20210216eighthrevisedorderonemergencytollingorsuspensionofstatuesoflimitationsandstatutoryandrulesdeadlines.pdf (https://perma.cc/Y8N7-3TEK)

May 24, 2021    Ninth Revised Administrative Order on the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters https://mdcourts.gov/sites/default/files/admin-orders-archive/20210524ninthrevisedordertheemergencytollingorsuspensionofstatuesoflimitationsandstatutoryandrulesdeadlines.pdf (https://perma.cc/QM56-PLKQ)

August 6, 2021  Tenth Revised Administrative Order on the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters https://mdcourts.gov/sites/default/files/admin-orders/20210806tenthrevisedordertheemergencytollingorsuspensionofstatuesoflimitationsandstatutoryandrulesdeadlines.pdf (https://perma.cc/EWW5-BHX6)

February 18, 2022   Eleventh Revised Administrative Order on the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters https://mdcourts.gov/sites/default/files/admin-orders/20220218eleventhrevisedonemergencytollingorsuspensionofstatutesoflimitationsandrulesdeadlines.pdf (https://perma.cc/75HL-8XCF)

March 1, 2022   Twelfth Revised Administrative Order on the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters https://mdcourts.gov/sites/default/files/admin-orders/20220301twelfthrevisedonemergencytollingorsuspensionofstatutesoflimitationsandrulesdeadlines.pdf (https://perma.cc/3NNS-HFSY)

*Final Tolling Order Recognizing Return to Normal Operations*

March 28, 2022     Final Administrative Order on the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters During the Covid-19 Emergency https://mdcourts.gov/sites/default/files/admin-orders/20220328finalonemergencytollingorsuspensionofstatutesoflimitationsandstatutoryandrulesdeadlines.pdf (https://perma.cc/5DHT-5VPX)

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/5a21mcn.pdf